IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **EASTERN GATEWAY COMMUNITY COLLEGE**, | Case No. 2:22-cv-3326 |
| Plaintiff, | **Judge Graham** |
| v. | **Magistrate Judge Deavers** |
| **MIGUEL CARDONA, et al.,** | |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Eastern Gateway Community College's ("EGCC") motion for preliminary injunction, Doc. 4.

**I.     Background**

Plaintiff Eastern Gateway Community College ("EGCC") is a state-supported institution of higher learning. Geoghegan Decl. ¶ 3. Its tuition is set at $131 per credit hour for Jefferson County residents, $137 per credit hour for all other in-state students, and $245 per credit hour for out-of-state students. *Id.* at ¶ 7. For the last seven years, EGCC has awarded scholarships to union-affiliated students through its Free College Benefit Program (the "Program"). *Id.* at ¶ 4. Approximately 92% of EGCC's students participate in the Program. *Id.* at ¶ 6.

The Program is designed to provide free college to union members and their families. *Id.* at ¶ 6. It does so by offering a "last-dollar" scholarship. *Id.* This scholarship covers the balance of tuition and fees remaining after Pell Grants, state aid, and employer or other third-party education grants are applied. *Id.* at ¶ 7. If a participating student receives no grants, their full tuition and fees are paid for by the scholarship. Functionally, this "last-dollar" scholarship is a tuition waiver. *Id.*

1

EGCC obtained approval from the Chancellor of the Ohio Department of Higher Education to provide the tuition waivers. *Id.* at ¶ 8.

Students participating in the Program have their fees and costs covered and so do not generally need to borrow Federal Direct Loans. *Id.* at 9. As a result, Pell funds account for a substantial portion of EGCC's overall revenue – 74.5%. *Id.* at ¶ 14.

Defendants are the United States Department of Education ("DOE") and the DOE's Secretary of Education Miguel Cardona (collectively "Defendants"). The DOE is an executive agency of the Federal Government of the United States empowered to administer the Pell Grant Program pursuant to 20 U.S.C. § 1070a(a)(1).

On February 7, 2022, DOE began of review of EGCC to assess its compliance with Title IV and its implementing regulations. Early Decl. at ¶ 4; Doc. 1-1. On July 18, 2022, DOE issued a cease-and-desist letter. The DOE reasoned that the Program causes disparate treatment among students based on Pell-eligibility. It explained:

> The Title IV statute makes clear that when establishing the tuition and fee component for Title IV recipients, an institution must use an amount that is "normally assessed a student carrying the same academic workload." 20 U.S.C. §§ 1087ll (cost of attendance). In implementing this statutory provision, the Department has consistently stated that a recipient of Title IV assistance cannot be assessed charges that are higher than what is charged to a student not receiving Title IV aid. See 2021-2022 Student Financial Aid Handbook, Vol. 3 at 56. As set forth above, Title IV recipients enrolled under the Free College Benefit Program are charged more than non-Title IV recipients enrolled under the same program. Consequently, this model violates the Title IV statute, and therefore, it cannot be used by EGCC as currently implemented.

Doc. 1-1 at 1-2. The DOE instructed that "EGCC must not disburse Pell funds to any new students enrolling in the Free College Benefit Program until it is redesigned to charge full tuition and fees

to all non-Pell eligible students." Doc. 1-1 at 2.[1] The DOE's review is ongoing, and a final report is expected to be issued within thirty days.

EGCC filed a complaint seeking injunctive relief on September 2, 2022, Doc. 1, and a motion for preliminary injunction on September 6, 2022, Doc. 4. The motion for preliminary injunction has been fully briefed and a hearing was held on October 21, 2022.

## II. Standard of Review

Preliminary injunctions are extraordinary remedies governed by the following considerations: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Ohio Republican Party v. Brunner,* 543 F.3d 357, 361 (6th Cir. 2008); *see also Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008).

"The party seeking the preliminary injunction bears the burden of justifying such relief," including showing likelihood of success and irreparable harm. *McNeilly v. Land,* 684 F.3d 611, 615 (6th Cir. 2012). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners,* 225 F.3d 620, 625 (6th Cir. 2000); *accord Jolivette v. Husted,* 694 F.3d 760, 765 (6th Cir. 2012). The movant must further show that "irreparable injury is *likely* in the absence of an injunction." *Winter,* 555 U.S. at 22 (emphasis in original). A mere possibility of injury is not enough. *Id.*

---

[1] DOE also placed EGCC on heightened cash monitoring 2 method of payment and requested EGCC provide a teach-out agreement. EGCC has withdrawn its request to enjoin its placement on the heightened cash monitoring 2 method of payment and its request to enjoin Defendants' request that EGCC enter into a teach-out agreement based on Defendants' representations that the teach-out request is not a demand.

### III. Discussion

**A. Likelihood of Success on the Merits**

EGCC presents several claims but focuses on due process in support of its motion for a preliminary injunction. It contends that DOE has violated its due process rights by taking action adverse to EGCC's interests by way of the cease-and-desist letter, without affording EGCC notice and an opportunity to be heard.

DOE asserts that the cease-and-desist letter is merely a preliminary measure taken to prevent EGCC from incurring additional penalties while final review is pending. It argues that the letter does not have consequences and is only an interim step in its overall program review of EGCC. It asserts that no final agency action will occur until the review is complete and a final review report is issued. At that time EGCC will receive the report and have an opportunity to be heard and for appellate review.

To state a due process claim, plaintiff must show: (1) a protectible interest, (2) a deprivation of that interest, (3) which occurred without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). The fundamental requirement of due process is notice and the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

For purposes of the present motion, the Court presumes that EGCC has a protectible interest in continuing its operations in enrolling new students in the Free College Benefit Program and accessing federal student financial aid. As counsel for DOE conceded at the preliminary injunction hearing, EGCC has satisfied accreditation requirements and received approval of its programs from the Ohio Department of Higher Education.

The cease-and-desist letter directly threatens to deprive EGCC of its ability to continue to operate its Program and dispense financial aid. Specifically, the letter expressly prohibits EGCC from disbursing Pell funds to any new students enrolling in the Free College Benefit Program. It also expressly prohibits EGCC from waiving tuition and fees for non-Pell students. *See* July 18, 2022 Letter ("EGCC must not disburse Pell funds to any new student enrolling in the Free College Benefit Program . . . . EGCC must cease waiving tuition and fees."). Contrary to DOE's assertions, this language was not preliminary in nature – it purports to immediately require EGCC to comply with its prohibitions. It reflects DOE's conclusion that students enrolled in the Program are ineligible for Pell funds and forbids EGCC from distributing Pell funds to any new students enrolling in the Program.

Finally, EGCC has demonstrated that it was not afforded notice and an opportunity to be heard. EGCC does not contest DOE's broad authority to ensure "the integrity of the Federal student financial assistance programs authorized under subchapter IV." 20 U.S.C. § 1018(b)(2)(A)(vi). But as DOE conceded, when DOE exercises its power, procedural protections are afforded to educational institutions by way of the final program review report. *Cf.* 34 CFR § 668.81 (authority to take enforcement actions is limited). In this case DOE circumvented the process by attempting to accomplish through the cease-and-desist letter what it should have waited to accomplish in the final report. In other words, the letter deprived EGCC of its interests well before EGCC could be afforded the protections associated with the review and final report.

The Court finds that DOE, instead of engaging in an action authorized by its regulations, opted to issue a cease-and-desist order demanding compliance with a determination made without process or even the final review report being completed. DOE argues that its broad oversight authority permits it to notify institutions of when their actions run afoul of Title IV. Indeed, it

5

asserts that its doing so saves the institutions from enhanced fines resulting from prolonged misconduct. Nothing prevents DOE from advising institutes of perceived misconduct. This is not what occurred here, however. DOE took the remedial action of issuing a cease-and-desist letter. Forbidding an institution from engaging in conduct is a far reach from providing notice that conduct engaged in may be forbidden or recommending that conduct be discontinued.

The Court thus finds that EGCC has demonstrated a likelihood of success on its due process claim.

## B. Irreparable Injury

The Court finds that EGCC has met its burden of showing irreparable injury absent an injunction. The cease-and-desist letter forbids EGCC from disbursing Pell funds to any new students enrolling in the Program. This is significant for EGCC. 92% of EGCC's students engage in the Program. And 74.5% of EGCC's revenue is from Pell funds. The cease-and-desist letter would cause EGCC's student population to decline and EGCC to lose a substantial portion of its revenue. Without an injunction, EGCC would likely have to close. Geoghegan Decl., ¶ 35.

## C. Third-Party Harm and Public Interest

The remaining two factors also support an injunction. Students participating in the program are uncertain as to whether they will be permitted to remain at EGCC and continue their education while the case and desist letter is in place. Even EGCC's students who do not participate in the Program are left questioning whether EGCC will have adequate funding to function. Maintaining the status quo, as it has been for the last seven years, until the DOE releases its final report does not harm third-parties or the public. Nor does maintaining the status quo harm DOE, which may continue with its preparation and issuance of a final report.

## IV. Preliminary Injunction Order

Accordingly, EGCC's motion for a preliminary injunction (Doc. 4) is GRANTED. The Court ORDERS that:

1. Defendants are enjoined from enforcing the July 18, 2022 Cease-and-Desist Letter's prohibition against EGCC enrolling new students in the Free College Benefit Program.

2. Defendants are enjoined from enforcing the July 18, 2022 Cease-and-Desist Letter's prohibition against EGCC waiving tuition and fees for non-Pell students.

3. Defendants are enjoined from taking any action limiting EGCC's access to federal student financial aid without affording EGCC notice and an opportunity to be heard as prescribed in the Higher Education Act, 20 U.S.C. § 1094 and applicable regulations, 34 C.F.R. § 668.81–99.

4. Nothing in this Order shall prevent Defendants from issuing a Final Program Review Report of EGCC.

5. This Order shall remain in effect until further order of the Court.

The Court finds that requiring security of EGCC is not necessary or appropriate.

**IT IS SO ORDERED**.

*s/ James L. Graham*
JAMES L. GRAHAM
United States District Judge

DATE: October 21, 2022