**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **EASTERN GATEWAY COMMUNITY COLLEGE,** | ) | |
| | ) | |
| | ) | CASE NO. 2:22-cv-03326-JLG-EPD |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF'S MOTION FOR SUMMARY** |
| **MIGUEL CARDONA, et al,** | ) | **JUDGMENT** |
| | ) | |
| *Defendants.* | ) | |

Plaintiff Eastern Gateway Community College ("EGCC"), by and through undersigned counsel and pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, respectfully moves this Honorable Court for an order granting summary judgment in favor of EGCC's claims against Defendants Secretary Cardona and the United States Department of Education (collectively, "ED").

Pursuant to Fed. R. Civ. P. 56(c), EGCC respectfully directs the Court's attention to its attached Memorandum in Support, as well as the evidentiary materials previously filed with the Court in Plaintiff's September 2, 2022 Complaint for Injunctive Relief and Damages ("Complaint") (ECF No. 1), Plaintiff's September 6, 2022 Memorandum in Support for Plaintiff's Motion for Preliminary Injunction ("Memorandum") (ECF No. 4), and the following Motion and Declarations filed simultaneously with the Court:

- Plaintiff's Motion for Defendants to Show Cause for Violating, and to Expand, the Court's October 21, 2022 Order Granting Plaintiff's Motion for Preliminary Injunction ("EGCC Motion to Show Cause");

- Declaration of Michael Geoghegan;

- Declaration of Kurt Pawlak;

- Declaration Exhibit 1, HCM2 Letter Response, December 6, 2023;

- Declaration Exhibit 2, HCM2 Early Email Exchange, May 8, 2023;

- Declaration Exhibit 3, Rescission Letter (Cease and Desist), April 19, 2023;

- Declaration Exhibit 4, Rescission Letter (Teach Out Agreement), April 19, 2023; and

- Program Review Report, ECF No. 51 (under seal).

Respectfully submitted,

*/s/ Adam D. Fuller*
Justin M. Alaburda (#0082139)
Victoria L. Ferrise (#0085012)
Adam D. Fuller (#0076431)
BRENNAN, MANNA & DIAMOND, LLC
75 East Market Street
Akron, OH 44308
Ph: (330) 253-5060 / Fax: (330) 253-1977
jmalaburda@bmdllc.com
vlferrise@bmdllc.com
adfuller@bmdllc.com

Marlon A. Primes (#0043982)
Abigail E. Peabody (#0099804)
BRENNAN, MANNA & DIAMOND, LLC
200 Public Square
Huntington Building, Suite 3270
Cleveland, OH 44114
Ph: (216) 658-2155 / Fax: (216) 658-2156
maprimes@bmdllc.com
aepeabody@bmdllc.com

Bonnie Little Graham (admitted PHV)
Madelaine Cleghorn (admitted PHV)
The Bruman Group, PLLC
1023 15th Street NW, Suite 500
Washington, DC 20005
Ph: (202) 965-3652 / Fax: (202) 965-8913
bgraham@bruman.com
mcleghorn@bruman.com

*Special Counsel for Plaintiff Eastern Gateway Community College*

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **EASTERN GATEWAY COMMUNITY** | ) | |
| **COLLEGE,** | ) | |
| | ) | CASE NO. 2:22-cv-03326- JLG-EPD |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MIGUEL CARDONA**, et al., | ) | |
| | ) | |
| *Defendants*. | | |

## MEMORANDUM IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF <u>PLAINTIFF EASTERN GATEWAY COMMUNITY COLLEGE</u>

**COMBINED TABLE OF CONTENTS AND AUTHORITIES**

PROCEDURAL HISTORY AND SUMMARY ARGUMENT ..................................................... 1

FACTS ................................................................................................................................ 2

STATEMENT OF ISSUES TO BE DECIDED ............................................................. 6

ARGUMENT ..................................................................................................................... 7

I. Summary Judgment Should be Granted When, as in this Case, No Genuine Dispute of Material Fact Remains to be Litigated and the Moving Party is Entitled to Judgment as a Matter of Law.. 7

> Fed. R. Civ. P. 56
> *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)
> *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)
> *Street v. J.C Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989)

II. EGCC is Entitled to Judgment as a Matter of Law on Counts I and III of EGCC's Complaint as ED's Unlawful and Arbitrary Determination Regarding the Free College Program and Resulting Limitation of EGCC's Participation in Federal Financial Aid is in Violation of 5 U.S.C. § 702 and § 706. .................................................................................................................................. 8

> A. ED's Determination Regarding the Free College Program Is Reviewable, Final Agency Action, Despite the Substitution of the Cease-and-Desist Letter with the "Preliminary" Program Review Report ........................................................................................ 8

> 5 U.S.C. § 702
> 5 U.S.C. § 704
> 20 U.S.C. § 1087ll
> 5 U.S.C. § 706(2)
> 5 U.S.C. §§ 551(4); 551(13)
> 20 U.S.C. § 1099c-1(b)
> 20 U.S.C. § 1094(b)
> 34 C.F.R. § 668.86(b)
> *Allsteel, Inc. v. U.S.E.P.A.*, 25 F.3d 312, 314 (6th Cir. 1994)
> *Minard Run Oil Co v. U.S. Forest Service*, 670 F.3d 236 (2011)

> B. ED's determination that the Free College Program violates the Title IV prohibition against assessing charges to Pell-eligible students that are higher than those assessed to Pell-ineligible students is contrary to law, arbitrary and capricious, and in excess of the

Department's statutory authority in several respects ........................................................14

  20 U.S.C. § 1232a
  20 U.S.C. § 1294(a)(24)
  34 C.F.R. §§ 690.6; 682.201(a); 673.5(b)
  *Safe Air for Everyone v. U.S. EPA*, 488 F.3d 1088, 1101 (9th Cir. 2007)
  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 52 (1983)
  *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* No. 18-587, 2020 WL 3271746, at *14 (U.S. June 18, 2020)
  *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,* 545 U.S. 967, 981 (2005)
  *Laborers' Intern. Union of North America, AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 391-393 (3d Cir.1994)
  *Bible v. USA Funds, Inc.*, No. 14-1806, *55 (7th Cir. 2015)
  *Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2444 (2014)
  *West Virginia v. EPA*, 597 U.S. ____ at 20 (2022) (slip opinion)
  *FSA Handbook (2021-2022)* Vol. 3, Ch. 7
  *FSA Handbook (2021-2022)* Vol. 3, Ch. 2


III. EGCC is Entitled to Judgment as a Matter of Law on Counts II and IV of EGCC's Complaint as ED's Decision Violates EGCC's Right to Due Process Under the APA and Constitution …......22

  34 C.F.R. § § 668.81-668.99
  *American Library Ass'n v. FCC*, 406 F.3d, 689, 698 (DC Cir. 2005)
  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)
  *Axon Enterprise, Inc. v. Federal Trade Commission, et al.* (No. 21-86) (cert to 9th Cir.)
  *Securities and Exchange Commission et al., v. Cochran* (cert. to 5th Cir.) (decided April 14, 2023)


CONCLUSION ..................................................................................................................... 26

## PROCEDURAL HISTORY AND SUMMARY ARGUMENT

Eastern Gateway Community College ("EGCC") is a statutorily created public community college in eastern Ohio that, among other educational opportunities, has provided a Free College Benefit Program (the "Program") to union-affiliated students through state-approved tuition waivers for seven years. On July 18, 2022, the U.S. Department of Education ("ED") issued an unlawful Cease-and-Desist Letter with respect to the Program, followed immediately by placing EGCC on Heightened Cash Management-2 ("HCM2") on August 8, 2022, and demanding EGCC enter into a teach out agreement in a letter dated August 10, 2022.

On September 2, 2022, EGCC brought several claims against ED, seeking both declaratory relief from ED's arbitrary conclusion that the Program violates Title IV of the Higher Education Act ("HEA"), and injunctive relief from ED's Cease-and-Desist Letter and subsequent enforcement actions. EGCC focused on due process violations in support of its motion for preliminary injunction, which was granted on October 21, 2022.

After receiving the injunction, the parties worked in good faith toward a settlement of the underlying claims. ED indicated to the Court and to EGCC that the program review, which formed the basis for the Cease-and-Desist action, would be released within a month of the October 2022 oral arguments on the motion for preliminary injunction. *See* Tr., ECF No. 39 at PAGEID# 387. In fact, ED did not issue its report until April 19, 2023, two days before a joint status report was due, and issued the finding regarding free college as part of a broader, preliminary program review report. While EGCC waited for this report, it proceeded under HCM2. The initial submission made by EGCC on October 4, 2022 was not processed until December 2023, and even then, only processed in part. Pawlak Decl. at ¶¶ 3, 6. ED refused to allow new claims while the prior submission was pending, and the October 2022 claim was not closed until March 2023. *Id.* at ¶ 5.

EGCC's second, smaller claim was submitted March 31, 2023, using a third-party servicer, Higher Education Assistance Group, Inc. ("HEAG"), to ensure EGCC addressed ED's concerns with the first submission and to set up a more streamlined, steady process establishing more consistent cashflow. *Id.* at ¶ 10. However, as of this filing, EGCC has not received any specific feedback or information regarding the status of reimbursements under this claim.

EGCC's situation is urgent. Now, at the end of the 2022-2023 school year, EGCC has been reimbursed only $8.5 million of the more than $25 million in federal student aid it is owed. Geoghegan Decl. at ¶ 10. ED's unreasonable delays threaten EGCC's continued ability to function as it is required to do under the Ohio Revised Code. Further, the Ohio Department of Higher Education (ODHE)-approved tuition waivers on which the Program relies are up for renewal June 30, 2023. *Id.* at ¶ 15. Without finality on the permissibility of the Program, ODHE has signaled it will not renew its approval. *Id.* EGCC does not want to be in this situation, but once again EGCC's only option is to seek Court intervention.

Judicial relief is therefore warranted for at least two reasons. First, ED's determination that the Free College Program violates Title IV of the HEA is a final agency action, is contrary to law, and is arbitrary and capricious. Second, ED continues to deny EGCC meaningful and timely due process, most recently through its eleventh-hour substitution of the Cease-and-Desist with a "preliminary" program review report and through either its known inability to process HCM2 at this scale or its purposeful delays in processing HCM2, such that EGCC is on the brink of insolvency.

## FACTS

In Plaintiff's September 2, 2022 Complaint for Injunctive Relief and Damages ("Complaint") (ECF No. 1, PAGEID# 4), Plaintiff's September 6, 2022 Memorandum in Support for Plaintiff's Motion for Preliminary Injunction ("Memorandum") (ECF No. 4, PAGEID# 88),

and Plaintiff's Motion to Show Cause filed simultaneously with this Motion, Plaintiff provided a detailed factual background for the Court. Plaintiff reincorporates those facts herein and provides the following statement of material facts that are not in dispute.

1. Eastern Gateway Community College ("EGCC") is a state-supported public institution of higher learning. EGCC students are predominantly working parents, attending school part-time. Geoghegan Decl., ECF No. 4-1 at PAGEID# 110, ¶ 3. More than half of EGCC's students are first-generation college students. *Id.*

2. For seven years, EGCC has provided scholarships to more than 90,000 union-affiliated students through its Free College Benefit Program (the "Program"). Geoghegan Decl., ECF No. 4-1 at PAGEID# 110, ¶ 4.

3. EGCC's Free College Benefit Program provides access to "free college" for union members and their families. Geoghegan Decl., ECF No. 4-1 at PAGEID# 111, ¶ 6. The Program follows the "last-dollar" or "last-mile" model of free college, in which an entity – including a state government or institution – will pay any tuition remaining at a public college after a student's existing federal financial aid award is used. *Id.*

4. Under the Program, all students are charged the same rate for tuition and fees, regardless of their Title IV eligibility. Geoghegan Decl., ECF No. 4-1 at PAGEID# 111, ¶ 7. Next, eligibility for Pell Grants is calculated and applied in accordance with ED policy and federal financial aid regulations, factoring in the student's enrollment status, cost of attendance, and expected family contribution. *Id.* After Pell Grants are applied, any state aid, employer or other third-party education grants are applied. *Id.* The remaining balance, if any, is covered by a last-dollar scholarship through tuition waivers under the Program. *Id.*

5.      In order to offer the last-dollar scholarship to qualifying students, EGCC obtained approval from the Chancellor of the Ohio Department of Higher Education ("ODHE") as required by Ohio law. Geoghegan Decl., ECF No. 4-1 at PAGEID# 111-112, ¶ 8. EGCC received approval through ODHE to offer institutional support through tuition waivers of up to $3,500 per year for each eligible in-state student, and up to $6,000 per year for each eligible out-of-state student. *Id.*; *see also* ECF No. 1-2.

6.      The last-dollar scholarship is treated as a payment of tuition and fees that have been charged to the student. Geoghegan Decl. ECF No. 4-1 at PAGEID# 112, ¶ 10. As such, per ED policy, the scholarship is considered part of a student's estimated financial assistance ("EFA") and the full amount of the tuition and fees are included in a student's cost of attendance. *Id.*

7.      On February 7, 2022, ED began an off-site program review at EGCC. Geoghegan Decl., ECF No. 4-1 at PAGEID# 112, ¶ 11. The stated purpose of this review in the ED's January 24, 2022 announcement letter was to "assess EGCC's administration of the Title IV, HEA programs in which it participates." *Id.*

8.       On July 18, 2022, ED issued its Cease-and-Desist Letter to EGCC alleging that the Program administered through EGCC was in violation of Title IV and instructing EGCC to cease providing the Program in its current form. Cease and Desist, ECF No. 1-1.

9.      On July 22, 2022, EGCC filed an Appeal of Limitation with the United States Department of Education Administrative Actions and Appeals Division. EGCC Administrative Appeal, ECF No. 1-3.

10.     The Director of the Administrative Actions and Appeals Service Group responded to EGCC's Appeal of Limitation on July 26, 2022, repeating ED's claim that the Program violated Title IV, and further indicating that the Cease-and-Desist Letter was not a limitation action    and,

therefore, EGCC had no basis for appealing ED's decision. Appeal Denial, ECF No. 1-4. The denial letter concluded that EGCC has no basis for appeal and states that the appeal would not be forwarded to the Department's Office of Hearings and Appeals. *Id*.

11. On August 8, 2022, EGCC received correspondence from ED placing EGCC on the Heightened Cash Monitoring 2 ("HCM2") method of payment effective immediately, based in part on ED's determination with respect to the Program. HCM2 Letter, ECF No. 1-7.

12. On August 10, 2022, EGCC received additional correspondence from ED requiring EGCC to enter into a teach-out agreement by September 10, 2022, effectively requiring EGCC students to prepare to transfer out of EGCC to complete their programs of study, again based on ED's determination with respect to the Program. Geoghegan Decl., ECF No. 4-1 at PAGEID# 116, ¶ 30.

13. On October 21, 2022, this Court granted Plaintiff's Motion for Preliminary Injunction, enjoining enforcement of ED's Cease-and-Desist Letter and enjoining ED from taking any action limiting EGCC's access to federal student financial aid without affording EGCC notice and an opportunity to be heard as prescribed in the Higher Education Act, 20 U.S.C. § 1094 and applicable regulations, 34 C.F.R. § 668.81–99. Order, ECF No. 37.

14. On April 19, 2023, ED finally released the preliminary program review report. Program Review Report, ECF No. 51.

15. Also on April 19, 2023, ED withdrew the July 18, 2022 Cease-and-Desist Letter and the August 10, 2022 demand for a teach-out agreement. Geoghegan Decl. Ex. 3.

16. To date, EGCC has received $8.5 million of the $25 million in federal student financial aid reimbursements it is owed. Geoghegan Decl. at ¶ 10.

17. Due to ED's delays in HCM2 reimbursement processing, as outlined in the Motion to Show Cause filed alongside this Motion, EGCC has been forced to spend down $10 million of their institutional reserve funds, leaving just $5 million remaining. Geoghegan Decl. at ¶ 11.

18. By EGCC's estimation, without further reimbursement of federal student financial aid, EGCC could be insolvent by July 1, 2023. Geoghegan Decl. at ¶ 12.

19. The tuition waivers provided through EGCC's Free College Program were reviewed and approved by the Chancellor of the Ohio Department of Higher Education ("ODHE"), as required by Ohio law. Geoghegan Decl. at ¶ 14. EGCC received approval from ODHE to offer institutional support as tuition waivers for up to $3,500 per year for each eligible in-state student, and up to $6,000 per year for each eligible out-of-state student. *Id.*

20. The ODHE-approved tuition waivers on which EGCC's Free College Program relies are up for renewal June 30, 2023. Geoghegan Decl. at ¶ 15. Without finality on the permissibility of the Program, ODHE has signaled it will not renew its approval of the tuition waivers. *Id.*

21. Since the Cease-and-Desist was issued, EGCC's enrollment has declined from 42,613 students in Spring 2022 to 24,544 students in Spring 2023, a 42.4% decrease in enrollment. Geoghegan Decl. at ¶ 18.

22. After the injunction, EGCC updated its student application to require students acknowledge that the Program is under review and free college cannot be guaranteed. Geoghegan Decl. at ¶ 19.

### STATEMENT OF ISSUES TO BE DECIDED

1. Whether ED's determination that EGCC's Free College Program violates Title IV of the HEA is arbitrary, capricious, an abuse of discretion and otherwise contrary to law under 5 U.S.C. § 702; § 706(2).

2.      Whether ED continues to violate EGCC's due process protections by reissuing its determination now as "preliminary" and non-appealable, despite EGCC's continuing harm, and by unreasonably delaying EGCC's reimbursements of Pell to the point of preventing its participation in administrative process.

**ARGUMENT**

**I.      Summary Judgment Should be Granted When, as in this Case, No Genuine Dispute of Material Fact Remains to be Litigated and the Moving Party is Entitled to Judgment as a Matter of Law.**

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of showing the absence of a genuine dispute of material fact as to an essential element of the non-moving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (*quoting* Fed. R. Civ. P. 56(c)).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable dispute. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In responding to a summary judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence to defeat a properly supported motion for summary judgment." *Street v. J.C Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989).

The mechanics of the Free College Program are not in dispute: EGCC offers a free college benefit to union-affiliated students through state-approved tuition waivers, applied after any  Pell

7

or state aid, following the process outlined in ED's own Federal Student Aid handbook. For the reasons that follow, no genuine dispute of material fact remains to be litigated on EGCC's claims that ED's determination that the Free College Program violated Title IV of the HEA is arbitrary, capricious and an abuse of discretion under the APA, and that ED's resulting limitation on EGCC's participation in federal financial through delays in administrative process and reimbursements under HCM2 is violation of due process. Last, EGCC is a statutorily created entity under the Ohio Revised Code. While ED may have discretion on the administration of federal funding for public institutions, it does not have the authority to unilaterally remove meaningful access to such funding without due process, thus causing a state-created entity to become insolvent.

**II.  EGCC is Entitled to Judgment as a Matter of Law on Counts I and III of EGCC's Complaint as ED's Unlawful and Arbitrary Determination Regarding the Free College Program and Resulting Limitation of EGCC's Participation in Federal Financial Aid is in Violation of 5 U.S.C. § 702 and §706.**

**A.  ED's Determination Regarding the Free College Program Is Reviewable, Final Agency Action, Despite the Substitution of the Cease-and-Desist Letter with the "Preliminary" Program Review Report**

In general, 5 U.S.C. § 702 gives a right of review of a federal agency action: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." As a direct and proximate result of ED's unlawful determination and enforcement actions in (1) publicly issuing the Cease-and-Desist Letter determining the Free College Program violated Title IV and demanding EGCC cease providing such Program, (2) denying EGCC an administrative appeal of its determination, (3) rejecting EGCC's proposed redesign of its Program based on its determination regarding the Program, (4) demanding EGCC enter into a teach-out agreement; and (5) placing EGCC on HCM2 and then unreasonably delaying reimbursements under such process to the point EGCC faces insolvency, EGCC has been materially damaged and continues to  incur

such damage. An actual, justiciable controversy exists between EGCC and ED for which EGCC has no adequate remedy at law.

Final agency actions are subject to judicial review. 5 U.S.C. § 704. In the Cease-and-Desist Letter, ED states that "[a]lthough the program review is still ongoing, this letter is to inform you that this program, as currently implemented, violates the Title IV prohibition against assessing charges to Title IV recipients that are higher than those charges assessed to non-Title IV recipients"—a conclusion that is categorically incorrect, but nonetheless a final conclusion with an immediate effect on EGCC. In a blatant effort to foreclose judicial review and further delay EGCC's opportunity for meaningful due process and resolution, ED withdrew its enjoined Cease-and-Desist Letter, instead substituting its finding regarding the Program outlined within a "preliminary" program review report issued on April 19, 2023. Geoghegan Decl. at ¶ 16. The program review report repeats the Cease-and-Desist Letter's arbitrary and capricious determination regarding the free college benefit, continuing to cite only the general definition of "cost of attendance" (20 U.S.C. § 1087*ll*) as its authority to disallow the college's state-approved tuition waivers for union-affiliated students. Program Review Report, ECF No. 51. It fails to acknowledge or address any of the arguments against the merit of such determination already plead through these proceedings, and it presents as "background" unrelated and unsubstantiated allegations regarding EGCC's various business relationships from disgruntled former contractors with the clear goal of undermining trust in the management and stability of the institution. *Id.*

The eleventh-hour replacement of the Cease-and-Desist Letter with the preliminary program review report does not remove the Court's jurisdiction to hold unlawful and set aside agency action, findings and conclusions found to be arbitrary and capricious. 5 U.S.C. § 706(2). The recent substitution in format of the action does not change the agency's "definitive position"

9

on the Program or the "practical and immediate effect on the plaintiff." *Allsteel, Inc. v. U.S.E.P.A.*, 25 F.3d 312, 314 (6th Cir. 1994). Further, "final agency action is to be given a pragmatic definition" (*Minard Run Oil Co v. U.S. Forest Service*, 670 F.3d 236 (2011)), which here, must include the existential consequences and harm ED's actions have caused and continue to cause.

Notably, ED's position on the Free College Program is definitive and unchanged by the rescission of the Cease-and-Desist letter and its immediate replacement with the preliminary program review report restating those claims. Consider the several communications ED made after issuing the Cease-and-Desist reiterating its position:

- Denial of EGCC Administrative Appeal Request, July 26, 2022 ("As outlined in the July 18th letter, as currently implemented, the [Free College Benefit] program violates the Title IV prohibition against assessing charges to Title IV recipients that are higher than those charges assessed to non-Title IV recipients."). ECF No. 1-4, PAGEID# 53.
- ED Response to EGCC Questions, August 5, 2022 ("It is the Department's position that EGCC's practice violates the Title IV requirements that the establishment of tuition and fee component for Title IV recipients must be an amount that is 'normally assessed a student carrying the same academic workload.'"). ECF No. 1-6, PAGEID# 55-56.
- HCM2 Letter, August 8, 2022 ("The Department has taken this action as a result of serious and systemic issues identified during the ongoing program review being conducted at your institution … [including] issues previously raised regarding the financing model of the Free College Benefit Program[.]". ECF No. 1-7, PAGEID # 57.
- Teach-Out Agreement Letter, August 10, 2022 ("In light of the on-going issues regarding funding of the Free College Benefit Program … the Department believes it is in the best interests of students for EGCC to enter into a teach-out agreement[.]"). ECF No. 1-8, PAGEID# 69 (rescinded April 19, 2023).
- ED Response to EGCC Program Redesign, September 26, 2022 ("As noted in previous communication, during the course of the review the Department determined the Free College Benefit Program, as currently implemented, violates the Title IV prohibition against assessing charges to Title IV recipients that are higher than those charges assessed to non-Title IV recipients. … The letter summarized the Department's conclusion that, as presently implemented, the Free College Benefit program results in students with lower levels of need have a higher 'write-off' and ultimately fewer charges than the needier Pell students.") ECF No. 24-1, PAGEID# 322.

- Rescission of the Cease-and-Desist Letter, April 19, 2023 ("On July 18, 2022, the Department issued a letter to EGCC stating that although the program review was still ongoing, the program violated the Title IV prohibition against assessing charges to Title IV recipients that are higher than those charges assessed to non-Title IV recipients[.] … On October 21, 2022, the US District Court for the Southern District of Ohio enjoined the Department from enforcing the July 18, 2022 letter's prohibition against EGCC[.] … The Department hereby rescinds the July 18, 2022 letter."] Geoghegan Decl., Ex. 3.

- Preliminary Program Review Report, April 19, 2023 ("In implementing [HEA's statutory definition of cost of attendance], the Department has consistently stated a recipient of Title IV assistance cannot be assessed charges that are higher than what is charged to a student not receiving Title IV aid. … Essentially, under this program, students who receive Pell funding are being charged for the program, but students not receiving Pell are not. This is in direct violation of the Title IV statute.") Program Review Report, ECF No. 51.

Even without the Cease-and-Desist Letter, ED's repeated (and incorrect) conclusion that the Free College Program violates the HEA definition of "cost of attendance" by assessing higher charges to Pell-recipients is the final statement of the agency's interpretation, as applied to EGCC's Program. Agency action is defined as "the whole or part of an agency rule, order, sanction or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). An agency rule is further defined as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy[.]" 5 U.S.C. § 551(4). The repeated, public and unwavering statements with respect to EGCC's Program reflect ED's definitive position.

Moreover, there are pragmatic considerations in determining final agency action which include the impact of ED's actions. *See Minard Run Oil Co v. U.S. Forest Service*, 670 F.3d 236 (2011) (Pragmatic considerations which "favor a finding of finality" include "(1) whether the decision represents the agency's definitive position on the question; (2) whether the decision has

the status of law with the expectation of immediate compliance; and (3) whether the decision has immediate impact on the day-to-day operations of the party seeking review.").

Since the issuance of the Cease-and-Desist and subsequent enforcement actions taken by ED, EGCC has faced grave fiscal difficulties due to the slow speed at which ED has processed requests for Title IV payments. EGCC has experienced a significant decline in enrollment due to the uncertainty created by ED's actions and continues to field near-constant questions from students, faculty, and staff regarding the continued uncertainty around the Program. *See* Geoghegan Decl. at ¶ 18. Even with the injunction, EGCC has had to inform students of the ongoing federal review and require student applicants to acknowledge a statement that EGCC cannot guarantee the continuity of the Free College Program. Geoghegan Decl. at ¶ 19; *and see* EGCC Online New Student Application, *available at* https://egcc.edu/admission/new/. ODHE has indicated it will not renew the tuition-waivers necessary for the program without final resolution on its permissibility. Geoghegan Decl. at ¶ 15. In short, ED's conclusion that EGCC's Program violates Title IV and denial of due process has significantly impeded the college's operations and pushed the school to the brink of insolvency.

Importantly, the fact of ED's public determination regarding the Program underscores the falsity of claiming it is now a "preliminary" conclusion. The HEA contains a confidentiality provision, which generally requires the Secretary of Education to "maintain and preserve at all times the confidentiality of any program review report . . . until a final program review is issued." 20 U.S.C. § 1099c–1(b)(8). The preservation of confidentiality is to provide the college "adequate opportunity to review and respond to any program review report and relevant materials related to the report" *before* it becomes final. 20 U.S.C. § 1099c–1(b)(6). Once a program review finding is final, it is immediately appealable to the Office of Hearings and Appeals. 20 U.S.C. § 1094(b). In

the alternative, and as an exception to the confidentiality provision for preliminary program review findings, ED may initiate enforcement proceedings, such as limitations and termination proceeds, and inform the appropriate State and accrediting agency of its action. 20 U.S.C. § 1099c–1(b)(5).

Here, the Cease-and-Desist Letter was copied to the Ohio Department of Higher Education ("ODHE") and EGCC's accreditor, the Higher Learning Commission ("HLC"). Cease and Desist, ECF No. 1-1 at PAGEID# 29. ED's placement of EGCC on HCM2 based in part on its conclusions related to the Program was copied to ODHE and HLC. HCM2 Letter, ECF No. 1-7 at  PAGEID# 57. ED's response to EGCC on the proposed program redesign was likewise copied to ODHE and HLC. Response to Program Redesign, ECF No. 24-1 at PAGEID# 325. Further, ED issued a statement to the press regarding its increased oversight of EGCC based on its determination that the Program violates Title IV. *See* Inside Higher Ed, *Education Department: No Pell Grants for Eastern Gateway*, July 28, 2022 ("An Education Department spokesperson provided *Inside Higher Ed* the following statement: 'The U.S. Department of Education's goal is to minimize disruption to students as we assess the impact of Eastern Gateway Community College's (EGCC's) treatment of students from low-income backgrounds who are eligible for Federal Pell Grants. As our oversight work continues, EGCC is not permitted to disburse Federal Pell Grant funds to any new students accepted for enrollment in the Free College Benefit Program after July 18, 2022, until it is redesigned to comply with federal student aid laws and regulations.'") *available at*  [Education Department: No Pell Grants for Eastern Gateway (insidehighered.com)](); *see also* Higher Ed Dive, *Education Department ramps up oversight of Eastern Gateway Community College,* August 9, 2022 *available at* [https://www.highereddive.com/news/education-department-ramps-up-oversight-of-eastern-gateway-community-colleg/629282/](). ED cannot now – nine months after publicly issuing the Cease-and-Desist – argue its conclusion is confidential and preliminary.

Consistent with the Court's Preliminary Injunction Order and statements made at oral argument concerning the same, ED could have issued its "Final Program Review Report" regarding the Free College Program, allowing EGCC to immediately appeal the determination. Order, ECF No. 37 at PAGEID# 362; Tr., ECF No. 39 at PAGEID# 390-91 (Mr. Ely: "So just to cut right to the heart of it, if an injunction were ordered here, the Department could issue the final program review report which would restate the exact same conclusions as contained in the cease-and-desist letter, and then there would be -- that would then trigger all of the various -- the various administrative review processes that are included in the regulations."); *and see* 20 U.S.C. § 1094(b). In the alternative, ED could have initiated limitation and/or termination proceedings regarding EGCC's participation in federal financial aid, again allowing EGCC to immediately appeal the determination. *See* 20 U.S.C. § 1094(c)(1)(F); 34 C.F.R. § 668.86(b). Instead, two days prior to the Joint Status Report deadline, ED issued its finding as part of a broader preliminary program review report, not yet appealable, and requiring significant collections of file reviews, data, and responses due within an unreachable 90-day deadline.

EGCC is not asking the Court to circumvent or disregard established administrative processes. EGCC vigorously contests much of the false narrative and conclusions within the preliminary program review report and will continue the administrative process with respect to those statements and findings. But, given ED's definitive position with respect to the Free College Program, and the actual and continued harm EGCC suffers because of ED's actions, ED cannot now, nine-months later, continue to avoid administrative or judicial review by marking its conclusion "preliminary." Pragmatic considerations – particularly the immediate and ongoing effect of ED's actions – demonstrate the finality of ED's determination.

**B. ED's determination that the Free College Program violates the Title IV prohibition against assessing charges to Pell-eligible students that are higher than those assessed**

to Pell-ineligible students is contrary to law, arbitrary and capricious, and in excess of the Department's statutory authority in several respects.

First, as even ED admits, EGCC assesses (charges) the same tuition and fees to all students, regardless of Pell eligibility, as required by the HEA. *See* Program Review Report, ECF No. 51 (Finding 1 "All students enrolled at Eastern Gateway under the Free College Benefit Program are charged for tuition, fees, and books."). ED fails to articulate how its position comports with the plain text of 20 U.S.C. § 1087*ll* (cost of attendance), the only cited basis for its conclusion, which states: "For purpose of this subchapter, the term 'cost of attendance' means – (1) tuition and fees normally assessed a student carrying the same academic workload as determined by the institution, and including costs for rental or purchase of any equipment, materials, or supplies required of all students in the same course of study[.]"

The definition of "assess" is to estimate or calculate the value of; or to set the value at a specified level. *See generally,* "Assess." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/assess. Accessed 22 May. 2023. EGCC's tuition is set at $131 per credit hour for Jefferson County students, $137 per credit hour for other in-state students, and $245 per credit hour for out-of-state students. Geoghegan Decl., ECF No. 4-1 at PAGEID# 111, ¶ 7. These same amounts are charged to all students, regardless of Pell eligibility. *Id.* However, without legal support, prior notice, or an opportunity for hearing, ED incorrectly concluded that the application of state-approved tuition waivers for the remaining balances of Program students effectively changes the tuition and fees initially assessed to the students, resulting in higher prices being assessed to Pell recipients. *See* Cease and Desist, ECF No.1-1. ED argues that under the Program, "students with lower levels of need have a higher 'write-off' and ultimately fewer charges than the needier Pell students" and "[t]he ultimate result of the implementation of the Free College Benefit Program is that the Pell Grant Program and the State

15

Grants are funding the educational costs of students whose incomes make them ineligible for either." Cease and Desist, ECF No. 1-1 at PAGEID# 28; *see also* Program Review Report, ECF No. 51 (Finding 1, p. 27 ("Eastern Gateway is merely writing off all non-Pell/FSEOG and in some case state grant charges on student accounts[.]").]

Quite simply, ED is starting at the end (dollars *received* by the institution) and working backwards from that point to evaluate the tuition and fees *assessed* to students, contrary to the plain meaning of cost of attendance and EGCC's consistent establishment and application of tuition and fees across all students. *See Safe Air for Everyone v. U.S. EPA*, 488 F.3d 1088, 1101 (9th Cir. 2007). ED is forced to reverse-engineer a violation of the definition of cost of attendance because it cannot identify any other Title IV law or regulation that would prohibit the Free College Program.

Second, EGCC's Free College Program is entirely aligned with ED's own regulations and guidance regarding the relationship between Pell and institutional aid, including tuition waivers. ED fails to explain why, in this case, it is contravening its own regulations and guidance regarding Pell grants as a first source of aid, the permissibility of applying tuition waivers *after* Pell to cover remaining financial need, and the idea that tuition waivers may be treated as estimated financial assistance included in the cost of attendance:

> Pell grants are considered to be the first source of aid for students with financial need. A student's eligibility for aid from the other need-based programs is then determined by subtracting the student's [expected family contribution] and [estimated financial assistance] (including the student's Pell Grant) from the [cost of attendance (COA)]. FSA Handbook (2021-2022) Vol. 3, Ch. 7, p. 3-193.

> Effects of waivers on [cost of attendance (COA)]: If your school treats a waiver as a payment of tuition and fees that have actually been charged to a student, then the waiver is considered estimated financial assistance (EFA) **and the full amount of the tuition and fees are included in a student's COA**. FSA Handbook (2021-2022), Vol. 3, Ch. 2, p 3-60 (emphasis added).

16

A correctly determined Pell Grant is never adjusted to take into account other forms of aid. FSA Handbook (2021-2022), Vol. 3, Ch. 7, p 3-195.

The notion that Pell grants serve as the first source of student aid is affirmed in federal financial aid regulations. Pell eligibility requirements at 34 C.F.R. § 690.6 do not include consideration of other forms of aid (generally referred to as *estimated financial assistance*). In contrast, eligibility requirements for other forms of aid, such as student Stafford loans at 34 C.F.R. § 682.201(a), require that a student "receive[] a final determination, or, in the case of a student who has filed an application with the school for a Pell Grant, a preliminary determination, from the school of the student's eligibility or ineligibility for a Pell Grant." *See also*, 34 C.F.R. § 673.5(b) (noting that estimated financial assistance must be taken into account when awarding Federal Perkins loan, FSEOG or FWS employment). As such, Pell eligibility, waivers of tuition, non-need based awards, scholarships, and other grants must first be determined in order for other federal sources of financial aid to be calculated.

Moreover, the tuition waivers provided through the Free College Program were reviewed and approved by the Chancellor of the ODHE, as required by Ohio law. 381.170 of Am. Sub. H.B. 166 and Directive 2009-011. EGCC received approval through ODHE for offering institutional support as tuition waivers up to $3,500 per year for each eligible in-state student, and up to $6,000 per year for each eligible out-of-state student. ODHE Directive, ECF No. 1-2. Title IV carries no similar requirement that ED approve tuition waivers. It is a remarkable exercise of prohibited federal overreach: to manufacture a finding based on an HEA definition that would shut down EGCC's state-approved administration of its Free College Program. *See* 20 U.S.C. § 1232a ("No provision of any applicable program shall be construed to authorize any department, agency, officer or employee of the United States to exercise any direction, supervision, or control over the curriculum, program of instruction, administration, or personnel of any educational institution[.]").

Consistent with the above-referenced requirements and guidance, the Free College Program covers, but does not exceed, the student's financial need. The availability of tuition waivers to qualifying students does not change Pell eligibility. The amount of the tuition waiver is included as estimated financial assistance for purposes of determining cost of attendance. Accordingly, eligible students participating in the Free College Program do not incur debt or participate in other federal financial assistance programs, unless they voluntarily choose to borrow loans limited to $1,000.

Contrary to existing guidance and regulations, and citing nothing beyond the definition of "cost of attendance" in 20 U.S.C. § 1087*ll*, ED states:

> The Department has determined that under the Free College Benefit Program, EGCC waives tuition and fees for students that are in excess of Title IV funds and, for some students, a small amount of state grants. For students not receiving Title IV funds, the entire tuition and fees are waived. **This results in Title IV students being charged for their educational programs and non-Title IV students not being charged, which violates Title IV requirements**. ED Response to EGCC Questions, ECF No. 1-6, PAGEID# 55-56.

ED fails to explain – or even acknowledge – the reversal of its guidance and regulations that Pell Grants are "never adjusted to take into account other forms of aid," and that tuition waivers treated "**as a payment of tuition and fees that have actually been charged**" (as EGCC does) are considered estimated financial assistance and "**the full amount of the tuition and fees are included in a student's COA**." *See, e.g.*, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 52 (1983) (requiring agencies to "explain the evidence which is available, and . . . offer a rational connection between the facts found and the choice made . . . [including] justification for rescinding the regulation"); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* No. 18-587, 2020 WL 3271746, at *14 (U.S. June 18, 2020) (requiring "reasoned analysis to support" rescission of prior policy) (quoting *State Farm*, 463 U.S. at 42).

18

Further, ED's position that institutional tuition waivers applied after an eligible student's Pell grant results in assessing charges to Title IV recipients that are higher than those charges assessed to non-Title IV recipients results in an "[u]nexplained inconsistency," and ED has not shown any awareness of its changed position. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005); *Laborers' Intern. Union of North America, AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 391-393 (3d Cir.1994); *see Bible v. USA Funds, Inc.*, No. 14-1806, *55 (7th Cir. 2015) (Manion) (concurring in part and dissenting in part) ("There is no evidence to suggest that the Department of Education ever interpreted the regulations in the manner advanced by Bible [prior to this case][.] … Applying the Department's *post hoc* rule to USA Funds is both wrong and unjust."). ED does not and cannot explain how its interpretation can be reconciled with other non-need based institutional scholarships and tuition waivers that institutions offer to qualifying students, or provide a basis for why such scholarships and waivers must be provided by "outside entities". Response to Program Redesign, ECF No. 24-1 at PAGEID# 322. For example, how is an institutional scholarship covering the remaining tuition after Pell and state aid for union-affiliated students different from institutional scholarships applied after Pell offered to student athletes, or students taking a particular program, or students from a particular state or county? Why would institutional scholarship (through tuition waivers) for one program result in discrepant cost of attendance for Pell eligible and ineligible students, but not others?

Third, there is nothing in law that requires Pell grants received as payment for tuition and fees be earmarked for sues that benefit only Pell-eligible students. Ultimately, ED's concern with respect to the Free College Program is its fallacious assertion that Pell grants are being used to subsidize non-Pell students. ED Response to EGCC Questions, ECF No. 1-6 at PAGEID# 56: (stating there were "virtually no funds being provided by any sources outside of Title IV" and that

"Title IV funds are essentially funding the 'free tuition' for non-Title IV students.").[1] But there is nothing in law that would prevent EGCC from leveraging its Pell revenue to offer free college to union-affiliated students. Rather, institutions may use Pell receipts on any operational costs – new facilities, student athletics, campus security, faculty salaries, etc. There are no restrictions whatsoever on how such funds may be spent once they are applied to a student's cost of attendance. EGCC does not violate any existing rule or requirement in leveraging its revenue to offer free college to qualifying students.

Requiring an institution to use Pell funds only for services or benefits to Pell-eligible students would be a significant departure from current requirements which would upend college budgets and plans for institutions ranging from small community colleges to major research universities. Institutions have long been able to treat funds received under Pell in the same way they would tuition dollars paid in cash because it helps cover general expenditures that benefit all students and keep an institution operational. To change this long-held practice can and should require an act of Congress as a "decision[] of vast economic and political significance. *See Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2444 (2014) ("We expect Congress to speak clearly if it wishes to assign to an agency decisions of vast 'economic and political significance.'") Congress can – and has – for example, placed limits on how much of proprietary institutions' revenue can come from federal sources. See 20 U.S.C. §1094(a)(24).[2] Limitations on the use or share of federal funds such as Pell grants which might make up an institution's budget are clearly an area where Congress has spoken, but it has made no such further limitations as ED attempts to

_____

[1] ED is factually wrong in asserting that "virtually no funds" support the program outside of Pell grants. Pell funds account for approximately 74.5% of EGCC's overall revenue. Geoghegan Decl., ECF No. 4-1 at PAGEID# 113, ¶ 14.
[2] This limitation is known colloquially as the "90/10 rule." Previous iterations of this statutory limitation capped federal contributions at 85% of revenue.

do. Instituting new restrictions where Congress has chosen to make none, and where Congress has further not authorized ED to limit such use through regulations, would constitute a "transformative expansion in [its] regulatory authority." *Utility Air*, 573 U. S., at 324, *West Virginia v. EPA*, 597 U.S. ____ at 20 (2022) (slip opinion).

Finally, ED's concerns around third-party resources for free college programs are policy concerns that have been raised over several years as free college programs using a last-dollar model have been implemented nationwide. *See, e.g.*, National Association of Student Financial Aid Administrators (NASFAA) Part 3: The Good, the Bad, and the Ugly: Financial Aid Professionals Unpack Free College, https://www.nasfaa.org/freecollege_part3. But it is an area of policy and practice that neither Congress in statute, nor ED in regulation or guidance has addressed, despite the prevalence of free college programs (the majority of which follow a last-dollar model). *See* College Promise, https://www.mypromisetool.org/?source=college-promise-web (identifying 362 free-college programs nationwide); *and* Campaign for Free College Tuition, https://www.freecollegenow.org/promise_programs (identifying free college tuition programs in at least 32 states); *and Community College Recover Students Through Free Tuition, The Psychological Power of the Word 'Free'*, Inside Higher Education, August 10, 2022, https://www.insidehighered.com/news/2022/08/11/community-colleges-recover-students-through-free-tuition. ED's longstanding silence with respect to free college programs following a last-dollar model – despite their prevalence and the widespread policy discussion surrounding methods of reducing college costs – creates a reliance interest, which ED fails to consider in its arbitrary determination that such programs must have an outside funding source. "When an agency changes course . . . it must be cognizant that longstanding policies may have engendered  serious

reliance interests that must be taken into account. It would be arbitrary and capricious to ignore such matters." *Regents*, 2020 WL 3271746, at *14 (citations and punctuation omitted).

The APA requires that a Court hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A). A rule is arbitrary and capricious if the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43. ED's interpretation of 20 USC 1087*ll* is arbitrary and capricious agency action because, among other reasons, ED failed to articulate how its position comports with the plain text of Section 1087*ll* of the HEA and why it was reversing its own guidance regarding how Pell is a first source of aid and tuition waivers do not change the underlying cost of attendance, generating an unexplained inconsistency in the ED's position of which it appears to be unaware. Further, ED ignores important aspects of the problem, and its decision to enforce its unlawful position runs counter to the evidence before ED. Finally, ED fails to take into account the reliance interests that its former position generated.

### III. **EGCC is Entitled to Judgment as a Matter of Law on Counts II and IV of EGCC's Complaint as ED's Decision Violates EGCC's Right to Due Process Under the APA and Constitution**.

In issuing the Cease-and-Desist, ED manufactured an extra-legal procedure to circumvent established administrative process and avoid any review or challenge of its arbitrary and capricious determination that the Program violates Title IV requirements. An agency has no power to act unless Congress confers that power (*American Library Ass'n v. FCC*, 406 F.3d, 689, 698 (DC Cir. 2005)). Given the comprehensive statutory and regulatory framework, Congress and the agency itself have clearly and intentionally defined the finite avenues through which ED can enforce

federal education laws and regulations applicable to financial aid programs, which do not include cease-and-desist letters. *See* 20 U.S.C. § 1094(c) (Enforcement of Standards) and "Subpart G" regulations (34 C.F.R. § § 668.81-668.99).

Now, ED's eleventh-hour substitution of the Cease-and-Desist with a "preliminary" report is yet another due process violation preventing EGCC meaningful and timely due process. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). At the time of the injunction hearing, ED could have cured its due process violations by (1) issuing its determination on the Program in a "Final Program Review Report" that would have immediately started an administrative appeal process under 20 U.S.C. § 1094(b)(2) (Order, ECF No. 37 at PAGEID # 362; Transcript, ECF No. 39, PAGEID# 390-91)[3], *or* (2) initiating enforcement proceedings to limit and/or terminate EGCC's participation in federal financial aid and affording EGCC notice and an opportunity to be heard, as prescribed in 20 U.S.C. § 1094(c) (Order, ECF No. 37 at PAGEID# 362). Instead, ED waited several months (during which it continually and repeatedly delayed reimbursements owed to EGCC) and then, just before a court deadline, issued its finding as "preliminary," with the apparent intention of bankrupting EGCC before any administrative process can happen.

To the extent ED argues that it simply is following the normal-course process for program reviews in issuing a preliminary finding before a final report, the argument fails when you consider the total circumstances. ED abandoned normal-course when it issued an unlawful Cease-and-

---

[3] Even if ED argues, contrary to statements in oral argument, that it must first issue the preliminary report before issuing a final report, the preliminary report with respect to the Program should have been ready by November 2022 and ED's intentional withholding of the preliminary report still deprives EGCC of timely administrative process. However, issuing the finding as preliminary was unnecessary here given the publicity of the finding, EGCC's administrative appeal, proposed redesign and the litigation regarding the same. Further, there is nothing in statute or regulation that would prohibit ED from issuing a program review report with respect to its determination on the Free College Program separately from remaining findings.

Desist letter, a teach out demand and placement of EGCC on HCM2, all based on its conclusion that the Program violates Title IV. Further, ED immediately shared its definitive conclusion and related enforcement actions with ODHE and HLC, even publicly commenting on them to the press, despite HEA's confidentiality provision with respect to preliminary program review findings. 20 U.S.C. § 1099c-1(b)(8). Moreover, ED abandoned its customary practice by placing a state-run community college on HCM2 reimbursement status, a status generally reserved for small, proprietary schools. Of course, ED assigned HCM2 with the expectation that EGCC's Program would cease operating, dropping enrollment by 90% or more, and/or the school would close under the teach out agreement. When the Cease-and-Desist was enjoined, ED did not adjust its capacity to process HCM2 for a public institution with more than 20,000 students. *See* Geoghegan Decl., Ex. 2. On the contrary, ED delayed communications, reimbursements, and ultimately denied EGCC process, ensuring the fulfillment of its declaration that EGCC would be unable to access funds under HCM2. Early Decl., ECF No. 19-1; *see also* EGCC Motion to Show Cause.

The problem with ED's recent actions – and the reason it renews a due process violation – is that EGCC has been and continues to be harmed by ED's delay and abuse of discretion. The publication of the Cease-and-Desist letter and subsequent enforcement actions evidence the finality of ED's position because the determination was not kept confidential, per 20 U.S.C. § 1099c-1(b)(8). And the consequences of the published finding have already happened: EGCC was denied an administrative appeal; the proposed redesign was denied; and significantly, the ODHE-approved tuition waivers necessary for operating the Program are at risk pending the resolution of ED's finding relative to the Program, as ODHE has indicated will not be renewed July 1, 2023 without a definitive answer on its allowability. *See generally* Geoghegan Decl. In other words, ED cannot go back in time and make its determination that the Free College Program violates Title IV

24

"preliminary", after it already issued the determination as "final" in the Cease-and-Desist without creating a new due process violation given the publicity and continuing harm from its actions.

Further, issuing its determination as "preliminary," which provides a response period of at least three months and then another year or more for ED to issue the final report, does not provide due process that is timely and meaningful when EGCC has already and continues to suffer harm from ED's actions. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (holding the fundamental requirement of due process is notice and the opportunity to be heard "at a meaningful time and in a meaningful manner."). This is especially true when considering ED's unreasonable delays in reimbursement through the HMC2 process. *See* EGCC Motion to Show Cause. ED sought to enforce its determination through the Cease-and-Desist, denying EGCC's administrative appeal of the same. When that was enjoined, ED delayed its promised issuance of the final program review report, and instead slowed the reimbursement process under HCM2 to the point that EGCC has received approximately one-third of the Pell funds it is owed and is depleting its institutional reserve in order to sustain educational services to its more than 20,000 students. *See* Geoghegan Decl. at ¶¶ 10-11.

EGCC has made every effort to work within ED's established HCM2 process: hiring a third-party servicer to assist in the HCM2 submissions; submitting a smaller, second claim in hopes of streamlining the review and processing time; requesting that ED honor its own instructions by allowing claims to be submitted every 30 days; and explaining the urgency of the cash flow and operational challenges that EGCC faces when forced to wait months for reimbursements. *See* EGCC Motion to Show Cause. Yet, ED has refused to allow new claims every 30 days, refused to provide a timeframe for EGCC's pending claim, failed to identify any specific, student file concerns, and refused to commit to a timelier process. *See* Pawlak Decl. at ¶ 10, Early Email

Exchange, Ex. 2. By failing to make these reimbursements in a timely manner, ED is manipulating a discretionary process in a way that limits EGCC's participation in Title IV without opportunity for due process.

ED's ongoing, deliberate actions to deny EGCC's protected interest in operating its Program and accessing federal financial aid, without providing adequate process, threaten EGCC's continued existence. By these actions, ED is running down the clock on EGCC, denying it timely access to funding under HCM2 and pushing out the program review process such that EGCC will be bankrupt before it even has a chance to defend itself. In short, ED has and continues to deprive EGCC of administrative and constitutional due process and, such actions are judicially reviewable. *See* A*xon Enterprise, Inc. v. Federal Trade Commission, et al.* (No. 21-86) (cert to 9th Cir.); *Securities and Exchange Commission et al., v. Cochran* (cert. to 5th Cir.) (decided April 14, 2023).

### CONCLUSION

EGCC respectfully requests entry of judgment against Defendants on EGCC's claims for injunctive and declaratory relief, declaring unlawful, arbitrary and in excess of statutory authority ED's conclusion that EGCC's Free College Program, implemented through state-approved tuition waivers, violates Title IV of the HEA and declaring unlawful and enjoining ED from depriving EGCC adequate, timely and meaningful due process and limiting EGCC's access to federal financial aid through delayed HCM2 reimbursements, and for such violation as demands an award of compensatory damages, punitive damages including statutory penalties as provided by law, the costs of this action and attorneys' fees, and any further relief that this Court believes just and equitable.

Respectfully submitted,

*/s/ Adam D. Fuller*
Justin M. Alaburda (#0082139)
Victoria L. Ferrise (#0085012)
Adam D. Fuller (#0076431)
BRENNAN, MANNA & DIAMOND, LLC
75 East Market Street
Akron, OH 44308
Ph: (330) 253-5060 / Fax: (330) 253-1977
jmalaburda@bmdllc.com
vlferrise@bmdllc.com
adfuller@bmdllc.com

Marlon A. Primes (#0043982)
Abigail E. Peabody (#0099804)
BRENNAN, MANNA & DIAMOND, LLC
200 Public Square
Huntington Building, Suite 3270
Cleveland, OH 44114
Ph: (216) 658-2155 / Fax: (216) 658-2156
maprimes@bmdllc.com
aepeabody@bmdllc.com

Bonnie Little Graham (admitted PHV)
Madelaine Cleghorn (admitted PHV)
The Bruman Group, PLLC
1023 15th Street NW, Suite 500
Washington, DC 20005
Ph: (202) 965-3652 / Fax: (202) 965-8913
bgraham@bruman.com
mcleghorn@bruman.com

***Special Counsel for Plaintiff Eastern Gateway Community College***

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2023, a copy of the Plaintiff's Motion for Summary Judgment and Memorandum in Support were filed electronically. Notice of this filing will be sent by operation of the court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served in compliance with Rule 5 of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's system.

*/s/ Adam D. Fuller*
Adam D. Fuller (#0076431)

4875-2752-2661, v. 1

28