IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **EASTERN GATEWAY COMMUNITY COLLEGE,** | )<br>)<br>) |
| *Plaintiff,* | )<br>) |
| v. | ) CASE NO. 2:22-cv-03326-JLG-EPD<br>) |
| **MIGUEL CARDONA**, et al., | )<br>)<br>) |
| *Defendants.* | ) |

**PLAINTIFF'S MOTION FOR DEFENDANTS TO SHOW CAUSE FOR VIOLATING, AND TO EXPAND , THE COURT'S OCTOBER 21, 2022 ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Eastern Gateway Community College ("EGCC") respectfully requests that the Court issue an Order to Show Cause why Defendants Secretary Cardona and the United States Department of Education (collectively, "ED") should not be held in contempt and sanctioned for violating the Court's October 21, 2022 Order (the "Order") granting EGCC's Motion for Preliminary Injunction by limiting EGCC's access to federal student financial aid without affording EGCC notice and an opportunity to be heard as prescribed in the Higher Education Act, 20 U.S.C. § 1094 and applicable regulations, 34 C.F.R. § 668.81–99. Additionally, EGCC requests that this Court expand the October 21, 2022 Order to 1) enjoin ED from limiting EGCC's access to student federal financial aid through the Heightened Cash Monitoring 2 ("HCM2") process; and 2) order that ED move EGCC from HCM2 to Heightened Cash Monitoring 1 ("HCM1") status unless ED can demonstrate capacity and willingness to process EGCC's claims under HCM2 on a monthly basis.

As detailed in the accompanying brief and declarations, ED has abused the HCM2 process in such an unprecedented manner that EGCC is just weeks away from insolvency, endangering the

education of more than 24,000 students, the careers of over 1,200 employees and contractors, and the local Ohio Valley economy. By either its inability to process a school the size of EGCC or its manipulation of the HCM2 process with respect to EGCC, ED has again limited EGCC's access to federal student financial aid and circumvented EGCC's due process rights in violation of this Court's October 21, 2022 Order. ED's actions not only threaten to force the closure of EGCC—a public entity created by Ohio state law[1]—they violate 5 U.S.C. § 702, 704, 706, 20 U.S.C. § 1094, and 34 C.F.R. § 668.86 in two ways. First, by intentionally bypassing the statutory and regulatory framework for limitation proceedings that would afford EGCC basic due process rights. Second, by enforcing the enjoined and unlawful Cease-and-Desist Letter under the guise of HCM2, a process which they are not capable of fairly implementing with EGCC.

For the reasons explained in the accompanying brief and declarations filed with this Motion, EGCC respectfully requests that the Court issue an Order to Show Cause why Defendants should not be held in contempt and sanctioned for violating the Court's October 21, 2022 Order and expand the Order to 1) enjoin ED from limiting EGCC's access to student federal financial aid through HCM2; and 2) order that ED move EGCC from HCM2 to Heightened Cash Monitoring 1 ("HCM1") status unless ED can demonstrate capacity and willingness to process EGCC's claims under HCM2 on a monthly basis. A proposed order is attached hereto.

---

[1] *See* OHIO REV. CODE ANN. § 3354.24.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **EASTERN GATEWAY COMMUNITY COLLEGE,** | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) CASE NO. 2:22-cv-03326-JLG-EPD ) |
| **MIGUEL CARDONA**, et al., | ) ) |
| *Defendants*. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR DEFENDANTS TO SHOW CAUSE FOR VIOLATING, AND TO
EXPAND, THE COURT'S OCTOBER 21, 2022 ORDER GRANTING
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**I.      Introduction**

Eastern Gateway Community College ("EGCC") must again respectfully approach this Court as a last resort with a plea to intervene with the U.S. Department of Education's ("ED") unlawful actions against EGCC. As detailed in the following Memorandum and supporting declarations, ED is on track to cause this public community college to be insolvent by July 1, 2023 if it is permitted to continue hamstringing EGCC through its distorted administration of the heightened cash monitoring 2 ("HCM2") process. ED has taken no reasonable steps to ensure timely, consistent reimbursements of federal student financial aid—EGCC's primary source of revenue—despite EGCC's multiple offers to work collaboratively towards a reasonable solution within HCM2. ED's either abuse of or inability to properly implement the HCM2 process is a limitation on EGCC's access to federal student financial aid, in direct violation of this Court's

3

October 21, 2022 Order. Now, weeks away from insolvency, EGCC must request that this Court 1) issue an Order to Show Cause why Defendants should not be held in contempt and sanctioned for violating the Court's October 21, 2022 Order; 2) expand the October 21, 2022 Order to enjoin ED from limiting EGCC's access to student federal financial aid through the HCM2 process; and 3) expand the October 21, 2022 Order to require ED move EGCC from HCM2 to Heightened Cash Monitoring 1 ("HCM1") status unless (or until) ED demonstrates capacity and willingness to process EGCC's claims under HCM2 on a monthly basis.

## II. Statement of Facts

In Plaintiff's September 2, 2022 Complaint for Injunctive Relief and Damages ("Complaint") and in Plaintiff's September 6, 2022 Memorandum in Support for Plaintiff's Motion for Preliminary Injunction ("Memorandum"), Plaintiff provided a detailed factual background for the Court. *See* Complaint, ECF No. 1, PAGEID# 4; PI Memorandum, ECF No. 4, PAGEID# 88. Plaintiff reincorporates those facts herein and provides the following additional facts in support of this Motion:

1. On August 8, 2022, ED issued instructions for the HCM2 process which stated that ED "will accept and process only one new HCM2 request during any 30-day time period." ED HCM2 Letter, ECF No. 4-8, PAGEID# 152. However, in a teleconference with ED on August 10, 2022, ED altered these instructions to inform EGCC that it was not permitted to submit a new HCM2 reimbursement request every 30 days, and that ED would not review a new reimbursement request until the prior request was completely closed out by ED. Pawlak Decl. at ¶5.

2. On October 4, 2022, EGCC made its first HCM2 submission to ED. Pawlak Decl. at ¶3. That submission requested reimbursement for approximately $9 million in Pell Grants related to institutional payments to Pell-eligible students, and $255,051 in loans for the 2022-2023

4

award year. *Id*. The submission also included reimbursement requests for $17,790 in 2021-2022 Pell Grants, and $90,226 in loans for the 2021-2022 award year. *Id*.

3. On or around November 17, 2022, EGCC hired a third-party servicer, Higher Education Assistance Group ("HEAG"), to assist with future HCM2 submissions. Pawlak Decl. at ¶4. HEAG is a well-known financial aid consulting group with expertise in financial aid administration, including HCM2 administration, at institutions of higher education. *Id*.

4. On December 6, 2022, over two months after EGCC's submission, ED informed EGCC that it would reimburse EGCC for just $500,000 of the $9 million Pell grant funds requested. Pawlak Decl., Ex. 1 at 2.

5. On December 8, 2022, EGCC provided ED with a supplemental spreadsheet identifying information about student credit balances, which was ED's primary claimed reasoning for not reimbursing the remaining Pell grant funds. Pawlak Decl. at ¶7.

6. After an additional week of processing by ED, EGCC was finally reimbursed an additional $6 million in Pell Grant funds as a result of the supplemental information provided by EGCC. Pawlak Decl. at ¶8.

7. However, ED did not close the first submission until March 20, 2023, meaning EGCC was not permitted to make a second submission until then. Pawlak Decl. at ¶9.

8. Once ED closed out EGCC's first HCM2 submission on March 20, 2023, EGCC made its second HCM2 submission on March 31, 2023. Pawlak Decl. at ¶10. As of the date of this Motion, EGCC has yet to receive any Pell Grant reimbursements from ED on these claims, nor has ED identified any specific student files in which they found errors. *Id*.

9. As of the date of this Motion, EGCC has not been provided a date by which these claims for reimbursement will be processed. Pawlak Decl. at ¶12.

10. On May 3, 2023, EGCC President Michael Geoghegan reached out to Dr. Jeremy Early to seek clarity on when EGCC can expect a reimbursement from the March 31, 2023 HCM2 submission. Geoghegan Decl., Ex. 2.

11. In the May 3, 2023 email, President Geoghegan conveyed that "going long periods without reimbursement places a financial and operational strain on the college.  We are hoping to plan our submission schedule to ensure consistent cash flow – as well as some predictability for your team." Geoghegan Decl., Ex. 2. In order to speed up the pace at which ED's review process is currently going, President Geoghegan proposed in his email that EGCC continue to submit smaller, more manageable batches of students with each submission "with the hope that would yield a more consistent, streamlined review, and shorter payment process under HCM2." *Id*. President Geoghegan noted that "the goal is to work toward an approximate 30-day turnaround for release of funds to help provide some stability to our budget and operations" and that "with the information gained from having gone through the process these last several months, as well as the support from your team and our third-party servicer, HEAG, we are confident that the submissions will be ready for processing." *Id*. Finally, President Geoghegan proposed that EGCC be able to "submit a new request with each 30-day period, consistent with the instructions provided" in the initial HCM2 Letter and offered to schedule a call with Dr. Early to discuss details of how a more regular submission cycle might work "and any other considerations we would need to incorporate." *Id*.

12. ED responded to President Geoghegan's email on May 8, 2023, reiterating again that EGCC may "only submit a claim after the previous one is finalized" and that ED "will only review one claim at a time." Geoghegan Decl., Ex. 2. The response did not suggest ED has plans

6

to work toward a more regular schedule or take steps to ensure that it processes claims in a timely manner.

13. As such, the only response EGCC has received from ED regarding the March 31, 2023 submission was after President Geoghegan followed up with Dr. Jeremy Early on May 3, 2023, over 30 days after the second HCM2 submission. Geoghegan Decl., Ex. 2. But in ED's response, Dr. Early did not identify any specific students with which ED had compliance concerns. *Id*. Instead, Dr. Early merely regurgitated the same generic concerns that ED had identified in EGCC's first HCM2 submission and that EGCC had assumed were resolved, since the ED approved reimbursements from that submission. *Id.*

14. EGCC has worked with HEAG to continue compiling reimbursement requests for the next submission. Pawlak Decl. at ¶13. Had ED allowed EGCC to submit every 30 days in accordance with its original instructions, EGCC could have already made a third submission. *Id*. Shortly after ED closes out the March 31, 2023 submission, EGCC anticipates submission of its next round of reimbursement requests. *Id*.

15. To date and in addition to the $8.5 million in Pell Grant funds received so far, EGCC should have access to $15 million in Pell Grant funds and $2.3 million in Federal Supplemental Educational Opportunity Grant funds. Geoghegan Decl. at ¶10. Federal student financial aid is EGCC's primary source of revenue. Geoghegan Decl. at ¶9.

16. Because ED has not reimbursed EGCC for more federal student financial aid, EGCC has been forced to use its dwindling institutional funds to apply $15 million to Pell-eligible student accounts and distributed over $800,000 in student refunds, so that EGCC's students can continue their education uninterrupted. Geoghegan Decl. at ¶11. These expenditures have caused EGCC to spend down over $10 million of its reserves, with just $5 million remaining. *Id.*

17. If ED is permitted to withhold Pell Grant reimbursements and continue at its current pace of review, EGCC could run out of funds with which to operate the College by July 1, 2023. Geoghegan Decl. at ¶12.

18. If EGCC does not have funding to operate, the 24,500 currently enrolled students will be forced to abandon their education at EGCC and over 1,200 employees and contractors will lose their jobs. Geoghegan Decl. at ¶13.

### III. Law and Argument

**A. This Court has Authority Under Federal Law to Hold Defendants in Contempt and Enforce Compliance with its Order.**

18 U.S.C. § 401 provides this Court with the power to punish contempt of its authority, or the "disobedience or resistance to" its orders. "Civil contempt … is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). The power of district courts to punish for contempt "is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911).

In the Sixth Circuit, "the complainant must prove that a definite and specific court order has been violated." *Nettis Env't Ltd. v. IWI, Inc.*, 46 F. Supp. 2d 722, 725 (N.D. Ohio 1999); *United States v. Conces*, 507 F.3d 1028, 1042 (6th Cir. 2007). This Court's October 21, 2022 Order ("Order") is definite and specific. The Order, in no uncertain terms, states that "Defendants are enjoined from enforcing the July 18, 2022 Cease-and-Desist Letter's prohibition against EGCC enrolling new students in the Free College Benefit Program[,]" that "Defendants are enjoined from enforcing the July 18, 2022 Cease-and-Desist Letter's prohibition against EGCC waiving tuition and fees for non-Pell students[,]" and that "Defendants are enjoined from taking *any action limiting*

*EGCC's access to federal student financial aid without affording EGCC notice and an opportunity to be heard* as prescribed in the Higher Education Act, 20 U.S.C. § 1094 and applicable regulations, 34 C.F.R. § 668.81–99." Order, ECF No. 37, PAGEID# 362 (emphasis added). Defendants have not asked for any further clarification to determine the scope and/or applicability of the Order they have violated.

In determining whether a party's actions rise to the level of contempt, "the court should determine if [the contemnor] took all reasonable steps within his power to comply with the court's order." *Legair v. Cir. City Stores, Inc.*, 2005 WL 1865373, at *3 (S.D. Ohio July 26, 2005), *aff'd*, 213 F. App'x 436 (6th Cir. 2007); *Nettis Environmental Ltd. V. IWI, Inc.*, 46 F. Supp.2d 722, 726 (N.D. Ohio 1999). "There is no requirement of willfulness to establish civil contempt, and the intent of a party to disobey a court order is irrelevant to the validity of [a] contempt finding." *Nettis*, 46 F. Supp. 2d at 725 (N.D. Ohio 1999) (internal quotations omitted). Far from taking *all* reasonable steps to comply with the Order, ED has taken *no* reasonable steps to comply with this Court's Order.

EGCC is not asking for this Court to insert itself into the administrative role of ED or to decide that ED does not have discretion on HCM2; rather, EGCC is before this Court to once again provide a "check and balance" that only the judicial system can do by ensuring due process and access to federal funds. As further detailed below, ED has gone so far as to reject all reasonable steps that EGCC actively proposed in order to prevent a need for this Motion.

**B.     By Manipulating or not Properly Administering the HCM2 Process, ED is Limiting EGCC's Access to Student Federal Financial Aid in Violation of the October 21, 2022 Order.**

In Dr. Early's September 20, 2022 Declaration, Dr. Early stated that ED believes "that Eastern Gateway will likely be unable to meet the HCM2 requirements[.]" Early Declaration, ECF

9

No. 19-1, PAGEID# 262. And that statement has become a reality, not because of the actions of EGCC, but the inaction and inabilities of ED. EGCC did not want to have this Court intervene again, but ED's actions in direct violation of the Order requires intervention.

While ED does have discretion to *place* EGCC on HCM2, ED does not have discretion to manipulate the HCM2 process or purposely place EGCC into an HCM2 process that is not functional to limit EGCC's access to federal student financial aid without due process (and, in doing so, to push EGCC to the brink of insolvency) in violation of this Court's Order. The Order not only enjoins the July 18, 2022 Cease-and-Desist Letter, it enjoins *any action limiting EGCC's access to federal student financial aid without affording EGCC notice and an opportunity to be heard.* Order, ECF No. 37, PAGEID# 362 (emphasis added).

EGCC is a public community college created by the State of Ohio. *See* OHIO REV. CODE ANN. § 3354.24. Currently, there are over 24,500 students enrolled at EGCC. At this point in the year, EGCC should have received more than $25 million in federal student aid. Geoghegan Decl. at ¶10. However, because of ED's delays in processing EGCC's reimbursement requests under HCM2, ED has only reimbursed EGCC with $8.5 million in Pell Grant funds so far, meaning EGCC has not had access to $15 million in Pell Grant funds and $2.3 million in Federal Supplemental Educational Opportunity Grant funds. Geoghegan Decl. at ¶10. These unreasonable delays have caused EGCC to spend down $10 million of its reserves, leaving the college with just $5 million total, and without direct access to federal student financial aid. Geoghegan Decl. at ¶11. If this Court does not intervene and ED is permitted to continue to drag out the HCM2 reimbursement process with complete, unchecked discretion, EGCC will be insolvent by July 1, 2023. Geoghegan Decl. at ¶12. If this Court does not intervene, a federal agency will defy Constitutional principles of federalism and cause a state entity to become insolvent and unable to

10

function. This is all under the guise of a discretionary HCM2 process, causing thousands of students to abandon their education and thousands of jobs to be lost, without any attempt at providing due process. Geoghegan Decl. at ¶13.

### 1. The Nearly Six-Month Processing of the First Submission.

In ED's August 8, 2022 letter notifying EGCC that it was being placed on HCM2, Dr. Jeremy Early wrote that "[n]ormal processing time [to process HCM2 reimbursement requests] is thirty (30) days from the date the claim is received." ED HCM2 Letter, ECF No. 4-8, PAGEID# 148. EGCC's first submission of Pell Grant reimbursement requests was made on October 4, 2022. Pawlak Decl., ECF No. 25-2, PAGEID# 337 at ¶10. EGCC's submission for 2021-2022 included 518 students; and EGCC's submission for 2022-2023 included 4,553 students. *Id*. In total, EGCC's first HCM2 submission requested reimbursement for approximately $9 million in Pell Grants related to institutional payments to Pell-eligible students. *Id*.

Although ED's HCM2 Letter clearly states that its office "will accept and process only one new HCM2 request during any 30-day time period[,]" (ED HCM2 Letter, ECF No. 4-8, PAGEID# 152), EGCC was later told that it could *not* submit a new HCM2 reimbursement claim after 30 days, until ED had completed its review of the open claim. Pawlak Decl. at ¶5; Geoghegan Decl., Ex. 2. As such, EGCC is completely at the mercy of the speed at which ED reviews and processes its reimbursement requests.

On December 6, 2022, over two months after EGCC's submission, ED informed EGCC that it would reimburse EGCC for just $500,000 of the $9 million Pell Grant funds requested. Pawlak Decl., Ex. 1. On December 8, 2022, EGCC provided ED with a supplemental spreadsheet identifying information about student credit balances, which ED claimed was the reason for not reimbursing the remaining Pell Grant funds. Pawlak Decl. at ¶7. Notably, EGCC could have

11

remedied this relatively simple issue immediately—as evidenced by the fact that it took only two days to provide the supplemental information to ED—but ED waited over two months to relay this concern to EGCC, unnecessarily dragging out the reimbursement timeline and indicating either a grave lack of capacity or, worse, an intentional slowing of cash flow. After an additional week of processing by ED, EGCC was finally reimbursed an additional $6 million in Pell Grant funds as a result of the supplemental information provided by EGCC. Pawlak Decl. at ¶8. However, ED did not close the first submission until March 20, 2023, meaning EGCC still could not make a second submission until approximately three months later. Pawlak Decl. at ¶9.

### 2. The Ongoing and Indefinite Processing of the Second Submission.

Once ED finally closed out EGCC's first HCM2 submission, EGCC made its second HCM2 submission on March 31, 2023. Pawlak Decl. at ¶10. As of the date of this Motion, EGCC has yet to receive any Pell Grant reimbursements from ED on these claims, nor has ED identified any specific student files in which they found errors. Pawlak Decl. at ¶10; Geoghegan Decl., Ex. 2. Further, ED has not provided EGCC a date by which these claims for reimbursement will be processed, as promised in ED's initial HCM2 Letter, despite EGCC regularly reaching out to ED for updates. Pawlak Decl. at ¶12. *See* ED HCM2 Letter, ECF No. 4-8, PAGEID# 158 ("If the Payment Analyst anticipates a delay in processing a request, our office will notify the institution and indicate the expected completion date.").

ED has failed to take any reasonable steps to comply with the Court's Order and provide EGCC with access to its federal student financial aid. And in fact, ED has expressly rejected the reasonable steps that EGCC proactively suggested in order to resolve its cash flow concerns and to avoid the need to file this motion. In addition to hiring HEAG (outside experts in financial aid consulting who have been assisting with EGCC's HCM2 submissions to ensure quality data is

submitted), EGCC has attempted to work collaboratively with ED to streamline the reimbursement process, only to be met with continued resistance from ED.

On May 3, 2023, EGCC President Michael Geoghegan reached out to Dr. Jeremy Early to seek clarity on when EGCC can expect a reimbursement from the March 31, 2023 HCM2 submission. Geoghegan Dec., Ex. 2. In this email, President Geoghegan conveyed that "going long periods without reimbursement places a financial and operational strain on the college. We are hoping to plan our submission schedule to ensure consistent cash flow – as well as some predictability for your team." *Id*. In order to speed up the pace at which ED's review process is currently going, President Geoghegan proposed in his email that EGCC continue to submit smaller, more manageable batches of students with each submission "with the hope that would yield a more consistent, streamlined review, and shorter payment process under HCM2." *Id*. President Geoghegan noted that "the goal is to work toward an approximate 30-day turnaround for release of funds to help provide some stability to our budget and operations" and that "with the information gained from having gone through the process these last several months, as well as the support from your team and our third-party servicer, HEAG, we are confident that the submissions will be ready for processing." *Id*.

Finally, President Geoghegan proposed that EGCC be able to "submit a new request with each 30-day period, consistent with the instructions provided" in the initial HCM2 Letter and offered to schedule a call with Dr. Early to discuss details of how a more regular submission cycle might work "and any other considerations we would need to incorporate." *Id*. ED responded to President Geoghegan's email on May 8, 2023, reiterating again that EGCC may "only submit a claim after the previous one is finalized" and that ED "will only review one claim at a time." *Id*.

13

As such, EGCC's financial future and continued existence depend entirely on the speed at which ED is willing and/or able to review and process EGCC's HCM2 claims.[2]

To the extent ED will argue the extensive timeframes needed to process EGCC's claims is due to the quality of the data and files provided, it only underscores ED's deliberate avoidance of providing EGCC with due process. If ED cannot manage HCM2 timely because it has such significant concerns with EGCC's data and administration of financial aid, then it should formally introduce enforcement proceedings – with notice and opportunity for hearing. *See* Order, ECF No. 37, PAGEID# 362. Instead, ED is deliberately avoiding review, while still denying EGCC access to financial aid through unreasonable delays in processing reimbursements. Moreover, EGCC disagrees with any contention that its data and files do not warrant reimbursement. ED's primary reason for delaying the release of funds in the October claim was that EGCC had provided proof of the check *issuance* to students with credit balances when ED wanted proof of *deposit*. Pawlak Decl., Ex. 1 at 4. With this clarification, EGCC provided the missing documentation within two days. Pawlak Decl. at ¶7. Further, of the 300 student files reviewed in the first claim, ED identified specific deficiencies in 26 files – less than 10% of the sample. Pawlak Decl., Ex. 1 at 8. EGCC, with the support of HEAG, responded to ED's concerns related to the specific students in support of the identified students' eligibility. Pawlak Decl. at ¶8. With respect to the second claim, ED argues the same issues are present in the claim—a claim that was prepared and reviewed by

---

[2] EGCC also seeks this intervention from this Court because of the bias ED has already demonstrated towards EGCC throughout the HCM2 process. In Dr. Early's Declaration, which is dated just a few weeks after ED's initial HCM2 Letter, before EGCC had even submitted its first reimbursement request, Dr. Early blatantly states that ED believes "that Eastern Gateway will likely be unable to meet the HCM2 requirements[.]" Early Declaration, ECF No. 19-1, PAGEID# 262. Despite EGCC's compliance with ED's HCM2 documentation requests, their hiring of an outside expert in financial aid consulting, and their proposals to ED for more timely, consistent processing, ED appears intent on maintaining this self-fulfilling prophecy until EGCC is forced to close its doors.

HEAG—yet offers no concrete examples of student files, requests no specific follow-up, and offers no timeframe or framework in which the issues might be resolved. Geoghegan Decl., Ex. 2.

Notably, HCM2 has historically (and currently) been applied to entities that are almost always small proprietary or private institutions.[3] As such, ED is presumably accustomed to processing HCM2 reimbursement requests for significantly smaller schools on a much smaller scale. Since EGCC's placement on HCM2 on August 8, 2022, ED has demonstrated that it does not have the institutional capacity to administer HCM2 at EGCC. As a public community college with over 24,500 students, EGCC has a much larger enrollment than the small proprietary schools typically placed on HCM2, but to the best of our knowledge, ED has not taken any steps to accommodate the increased volume of student files to review.

Federal student financial aid is EGCC's primary source of revenue, as it is for most public community colleges. Geoghegan Decl. at ¶9. Whether intentional or not, ED's refusal to take any reasonable measures to review and process EGCC's Pell Grant reimbursement requests on a timely, regular basis will effectively bankrupt EGCC by July 1, 2023, absent intervention from this Court. Geoghegan Decl. at ¶12. ED's lack of administrative capacity to review and process EGCC's HCM2 reimbursement requests should not be the reason EGCC is forced to close its doors. ED's abuse of the HCM2 process and refusal to take any reasonable steps to provide EGCC with access to its federal student financial aid is a violation of the Court's Order.

---

[3] *Institutions on HCM by Quarter*, FEDERAL STUDENT AID, https://studentaid.gov/data-center/school/hcm (last visited May 17, 2023).

15

**C.   While ED has Discretion to Place EGCC on HCM2, it Does not Have Discretion to Abuse the Implementation of HCM2 to Limit EGCC's Access to Federal Student Financial Aid Without Due Process.**

To be sure, ED will argue that HCM2 is committed to agency discretion, precluding any review of this Court. EGCC has never challenged, and does not now challenge, ED's *decision* to place EGCC on HCM2 or even ED's authority to modify what documentation is required to approve reimbursement requests. That authority is clear under the implementing regulations of the Higher Education Act. *See* 34 C.F.R. § 668.162(a); 34 C.F.R. § 668.162 (d). What EGCC challenges now is ED's abuse of the HCM2 process to limit EGCC's access to federal student financial aid in clear violation of this Court's Order, with which this Court absolutely has the authority to compel compliance. While ED has discretion to place EGCC on HCM2, it does not have complete and unfettered discretion to administer HCM2 in a way that limits EGCC's participation in and access to federal student financial aid and access to due process. ED must not be permitted to hide behind the guise of a discretionary process as it forces a public community college, created by the State of Ohio, into insolvency while keeping administrative remedies out of reach.

The General Education Provisions Act ("GEPA") provides that "[n]o provision of any applicable program shall be construed to authorize any department, agency, officer, or employee of the United States to exercise any direction, supervision, or control over the curriculum, program of instruction, administration, or personnel of any educational institution, school, or school system[.]" 20 U.S.C. § 1232(a); *see also* 20 U.S.C. § 3403(b). Further, 20 U.S.C. § 3403(a) dictates that "[i]t is the intention of the Congress in the establishment of the Department [of Education] to protect the rights of State and local governments and public and private educational institutions in the areas of educational policies and administration of programs and to strengthen and improve

16

the control of such governments and institutions over their own educational programs and policies" and that the "establishment of the Department of Education shall not increase the authority of the Federal Government over education or diminish the responsibility for education which is reserved to the States and the local school systems and other instrumentalities of the States." *See also* 20 U.S.C. § 3401(4) ("in our Federal system, the primary public responsibility for education is reserved respectively to the States and the local school systems and other instrumentalities of the States.")

ED's federal overreach in its abuse of the HCM2 process with EGCC flies in the face of these statutory provisions and the explicit congressional intent behind the creation of ED as a federal agency. While ED has some discretion with the decision to place an institution on HCM2, that discretion is not unlimited. Here, ED is exercising unlawful control over the administration and personnel of EGCC, in violation of 20 U.S.C. § 1232(a) and 20 U.S.C. § 3403(b), to such a high degree that EGCC is headed to insolvency by July 1, 2023 without intervention from this Court. Moreover, EGCC was created by Ohio Statute–OHIO REV. CODE ANN. § 3354.24. Far from Congress' stated intent for ED, "to protect the rights of State and local governments and public and private educational institutions" and to "strengthen and improve the control of such governments and institutions over their own educational programs and policies," ED's manipulation of the HCM2 process has harmed EGCC and the State of Ohio and has weakened EGCC and the State of Ohio's ability to administer their own educational programs and policies. ED has far exceeded any discretion it may claim.

**D.      Because ED Does not Have the Capacity to Administer HCM2 Without Violating the Court's October 21, 2022 Order, This Court Should Order EGCC be Moved to HCM1.**

Part of the relief that EGCC now seeks is for this Court to expand its October 21, 2022 Order to require ED to move EGCC from HCM2 to HCM1, unless (or until) ED demonstrates

capacity and willingness to process EGCC's reimbursements monthly. HCM1 is another form of heightened cash monitoring status which gives ED the same level of oversight over EGCC's federal student financial aid, but changes the order of process: allowing EGCC to access its federal student financial aid while ED reviews its HCM1 claim submissions.[4] Under HCM1, ED would still maintain oversight over EGCC's federal student financial aid, but ED's protracted review and processing of EGCC's submissions would not prevent EGCC from operating and making payroll, because EGCC would be able to access its federal student financial aid funds during ED's review. This would mitigate EGCC's immediate financial crisis and ensure EGCC can remain open and serving students, while still providing ED with the same level of oversight.

Were this a typical HCM2 situation with a small proprietary school in which ED was able to provide timely reimbursements, we would not be seeking this Court's intervention. But because ED has proven over the past nine months that it does not have—or does not care to provide—the administrative capacity to review and process the reimbursement requests for EGCC's volume of students without severely limiting EGCC's access to federal student financial aid, EGCC requires intervention of this Court. ED's abuse of the HCM2 process is in violation of this Court's Order enjoining ED from limiting EGCC's access to federal financial aid without due process. As such, it is well within this Court's authority to compel compliance with that Order by requiring that ED move EGCC from HCM2 to HCM1.

### IV. Conclusion

EGCC leadership estimates that EGCC could be insolvent by July 1, 2023 if this Court does not intervene and provide the requested relief. Geoghegan Decl. at ¶12. ED has proven time

---

[4] *See Federal Student Aid Handbook, Volume 4*, FEDERAL STUDENT AID (May 2, 2022), https://fsapartners.ed.gov/sites/default/files/2022-2023/2022-2023_Federal_Student_Aid_Handbook/_knowledge-center_fsa-handbook_2022-2023_vol4.pdf

and again that it is not willing to work cooperatively with EGCC or take any reasonable steps to come to a workable reimbursement schedule under HCM2. In so doing, ED has limited EGCC's access to federal student financial aid and due process in direct violation of this Court's Order. While ED has discretion in the decision to place EGCC on HCM2, that discretion does not extend so far as to allow ED unfettered control over the administration of EGCC—a public community college created by the State of Ohio. Without intervention from this Court, EGCC could be forced to cease operations and turn away over 24,500 students in a matter of weeks. EGCC respectfully requests the Court prevent this outcome by 1) issuing an Order to Show Cause why Defendants should not be held in contempt and sanctioned for violating the Court's October 21, 2022 Order; 2) expanding the October 21, 2022 Order to enjoin ED from limiting EGCC's access to student federal financial aid through the HCM2 process; and 3) expanding the October 21, 2022 Order to require ED move EGCC from HCM2 to HCM1, unless or until ED processes EGCC's claims under HCM2 on a monthly basis.

Respectfully submitted,

*/s/ Adam D. Fuller*
Justin M. Alaburda (#0082139)
Victoria L. Ferrise (#0085012)
Adam D. Fuller (#0076431)
BRENNAN, MANNA & DIAMOND, LLC
75 East Market Street
Akron, OH 44308
Ph: (330) 253-5060 / Fax: (330) 253-1977
jmalaburda@bmdllc.com
vlferrise@bmdllc.com
adfuller@bmdllc.com

Marlon A. Primes (#0043982)
Abigail E. Peabody (#0099804)
BRENNAN, MANNA & DIAMOND, LLC
200 Public Square
Huntington Building, Suite 3270
Cleveland, OH 44114

Ph: (216) 658-2155 / Fax: (216) 658-2156
maprimes@bmdllc.com
aepeabody@bmdllc.com

Bonnie Little Graham (admitted PHV)
Madelaine Cleghorn (admitted PHV)
The Bruman Group, PLLC
1023 15th Street NW, Suite 500
Washington, DC 20005
Ph: (202) 965-3652 / Fax: (202) 965-8913
bgraham@bruman.com
mcleghorn@bruman.com

*Special Counsel for Plaintiff Eastern Gateway Community College*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2023, a copy of the Plaintiff's Motion for Defendants to Show Cause for Violating, and to Expand, the Court's October 21, 2022 Order Granting Plaintiff's Motion for Preliminary Injunction and Memorandum in Support were filed electronically. Notice of this filing will be sent by operation of the court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served in compliance with Rule 5 of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's system.

/s/ Adam D. Fuller
Adam D. Fuller (#0076431)

4894-6623-2934, v. 1